## Beckman v. Adams

*Kilker & Kilker*, for plaintiff.

*L. E. Bashore*, for defendant.

HOUCK, P. J., July 24, 1939.—This case, to recover an assessment from an alleged stockholder in a closed bank, was tried without a jury pursuant to the Act of April 22, 1874, P. L. 109, 12 PS §688. Final disposition was held in abeyance pending the decision of the Supreme Court in

Gordon, Secretary of Banking, v. Wenderoth et al., 335 Pa. 1 (decided May 25, 1939), in which the lower court held (32 D. & C. 637) that the act authorizing the assessment is unconstitutional. In its decision, the Supreme Court did not pass upon this question, and I proceed to determine the case on the assumption that the act is constitutional. I make the following

## Findings of fact

1. Plaintiff is the Secretary of Banking of the Commonwealth of Pennsylvania and is receiver of the Bank of Auburn, Auburn, Pa., the oath of office having been duly administered to him on January 3, 1938.

2. Defendant is a resident of Adamsdale, Schuylkill County, Pa.

3. William D. Gordon, while Secretary of Banking as aforesaid, by virtue of The Banking Act of June 15, 1923, P. L. 809, and pursuant to the provisions of that act, took possession of the business and property of said Bank of Auburn on October 19, 1931.

4. Said William D. Gordon, Secretary of Banking, having examined the affairs of the said bank, and having determined that the reasonable value of its assets was not sufficient to pay its creditors in full, on or about February 19, 1932, determined to enforce the individual liability of the stockholders of said bank in an amount equal to the total par value of the stock held by the said stockholders.

5. On October 6, 1928, said bank issued and delivered to Thos. H. Haeseler, guardian of Marvin L. Adams, a certificate for eight shares of the capital stock of said bank, each share having a par value of $50.

6. At the time said certificate was issued, Marvin L. Adams, defendant, was a minor and attained his majority on April 17, 1932.

7. The certificate aforesaid was never endorsed by Thos. H. Haeseler or by any other person.

8. The said William D. Gordon was succeeded as Secretary of Banking and receiver of the Bank of Auburn by Luther A. Harr, who was subsequently succeeded by Irland McK. Beckman, plaintiff.

9. In pursuance of the said stock assessment, plaintiff made demand in writing upon Marvin L. Adams for the payment of the sum of $400; said demand was mailed by registered mail to defendant at his last known address on May 31, 1938, and demanded payment on or before July 1, 1938.

10. Defendant failed, neglected, and refused to pay the said sum of $400 or any part thereof.

The findings, as stated, are the only findings of fact warranted by the proof. Defendant averred in his affidavit of defense that an action in assumpsit was instituted against the guardian on March 21, 1934, to recover this stock assessment, which resulted in a judgment against the guardian for $436.33. This fact, however, was not put in evidence. Defendant also pleaded the bar of the statute of limitations, but he neglected to show when, if ever, demand was made on the guardian, and the only fact before us is that demand was made on defendant on May 31, 1938, for payment on or before July 1, 1938, and, for all that appears in the case, the statute did not begin to run until July 1, 1938: Beckman, etc., v. Koerper, 6 Schuyl. Reg. 200. It follows that plaintiff is entitled to recover if, in fact, defendant was a stockholder in the bank when demand for payment was made. I do not think he was.

Apparently, although it was not proved, these shares of stock are an inheritance, and plaintiff's contention is that defendant never did any act which could be construed as a disavowal of the inheritance of these shares at any time within the six years since he attained his majority; that it was his privilege, upon reaching the age of 21, to refuse or renounce his right to, or disavow the inheritance of, said shares of stock, and that his failure to exercise this privilege allows the ownership of said stock to re-

main vested in him. This contention overlooks the fact that defendant never became the owner of the stock and never did anything which would estop him from disavowing ownership now. The certificate is in the name of Thos. H. Haeseler, guardian for Marvin L. Adams, and it never was transferred to Marvin L. Adams, defendant. There is no evidence that defendant knew that the stock had been issued to his guardian, and he was not called upon to do anything. Under the Uniform Stock Transfer Act of May 5, 1911, P. L. 126, 15 PS §301, title to a certificate, and to the shares represented thereby, can be transferred only by delivery of the certificate, endorsed either in blank or to a specified person, by the person appearing by the certificate to be the owner of the shares represented thereby, or by delivery of the certificate and a separate written assignment. As said before, this certificate is not endorsed and title never passed to the ward. Had the certificate been endorsed and delivered to defendant, the burden may have been cast upon him of electing either to affirm or avoid the transaction, but it was not. Or, had he taken any affirmative action acknowledging ownership or reaped any benefit, he would be estopped, but he did nothing. In Keyser v. Hitz, 133 U. S. 138, a husband transferred stock to his wife, who received dividend checks and signed an application to convert the bank into another kind of bank. The wife was held liable for the double assessment under the Federal statute, the court saying (p. 149) :

"We must not be understood as saying that the *mere* transfer of the stock on the books of the bank, to the name of the defendant, imposed upon her the individual liability attached by law to the position of shareholder in a national banking association. If the transfers were, in fact, without her knowledge and consent, and she was not informed of what was so done—nothing more appearing—she would not be held to have assumed or incurred liability for the debts, contracts and engagements of the

bank. But if, after the transfers, she joined in the application to convert . . . or in any other mode approved, ratified or acquiesced in such transfers, or accepted any of the benefits arising from the ownership of the stock" she would be liable.

A fortiori, this must be the rule where, as in the case at bar, the stock is not even transferred to defendant on the books of the bank. During minority, clearly a minor is not liable for the double assessment, and, if liability is to be imposed upon him after he attains his majority, it must be by reason of some act on the minor's part indicating his acceptance of the stock: See 3 Zollman, Banks and Banking, sec. 1763; Commissioner of Banks v. Tremont Trust Co. et al., 259 Mass. 162, 156 N. E. 7; Rosenberg v. Bennett, etc., 35 Ga. App. 86, 132 S. E. 119; Fitzpatrick's Guardian v. First National Bank, etc., 256 Ky. 93, 75 S. W. (2d) 754. In my opinion, plaintiff has failed to show that the stock was transferred to defendant, and there is no ground on which defendant may be estopped from asserting that he is not the owner of the stock. Consequently, plaintiff may not recover.

### Conclusions of law

1. Defendant was not the owner of the eight shares of the capital stock of the Bank of Auburn, on which this suit is based, when demand for the payment of the stock assessment was made on him on May 31, 1938.

2. Defendant is not estopped from asserting that he was not the owner of said shares of stock.

3. Plaintiff is not entitled to recover the stock assessment of $400, or any other amount, in this suit.

And now, July 24, 1939, the prothonotary is directed to file the foregoing decision of the court and to give notice thereof forthwith to the parties or their attorneys, and, if no exceptions thereto are filed within 30 days after service of such notice, judgment for defendant shall be entered thereon by the prothonotary.